UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRENDA LEAVITT,

Plaintiff,

v.

VICTORIAN FINANCE, LLC,

Defendant.

**Civil Action File No.**

**JURY TRIAL DEMANDED**

**COMPLAINT**

Plaintiff Brenda Leavitt ("Ms. Leavitt") states her complaint against the above-named Defendant as follows.

**INTRODUCTION**

1. This is a complaint for (1) retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); (2) disability discrimination in violation of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12111, *et seq.*, as amended (the "ADA"); (3) retaliation in violation of the ADA; (4) failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"); and (5) breach of contract under Georgia law.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Ms. Leavitt's claims pursuant to 28 U.S.C. §§ 1331 and 1367.

3. Venue is proper in this Court because the acts or omissions described herein occurred within the Atlanta Division of the Northern District of Georgia.

## PARTIES

4. Ms. Leavitt is a resident and citizen of the State of Georgia. She submits to the jurisdiction of this Court.

5. Ms. Leavitt is and at all times relevant hereto was an individual with a disability as that term is defined under 42 U.S.C. § 12102(1).

6. Defendant Victorian Finance, LLC ("Victorian Finance") is a Pennsylvania limited liability company registered to conduct business within the State of Georgia. Victorian Finance is a mortgage lender with branch offices in numerous states, including the branch office at which Ms. Leavitt worked in Atlanta, Georgia.

7. At all times relevant to this lawsuit, Victorian Finance has been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111, and Section 101(7) of the ADA, 42 U.S.C. § 12111 (7), which incorporate by reference Sections 701 (g) and (h)

of Title VII, 42 U.S.C. § 2000e (g) and (h).

8. At all times relevant to this lawsuit, Victorian Finance was an "employer" as such term is defined under the FLSA.

9. At all times relevant to this lawsuit, Victorian Finance was an enterprise engaged in commerce or the production of goods for commerce within the meaning of the FLSA.

10. During each of the three years preceding the filing of this complaint, Victorian Finance employed more than 2 employees who were engaged in interstate commerce.

## ADMINISTRATIVE PROCEDURES

11. Ms. Leavitt has exhausted her administrative remedies with respect to the claims asserted herein.

12. Ms. Leavitt filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on June 18, 2020.

13. The EEOC issued a "Notice of Right to Sue" on October 27, 2020 entitling an action to be commenced within 90 days of receipt of such notice.

## FACTUAL ALLEGATIONS

### Factual Allegations Regarding Plaintiff's ADA and Title VII Claims

14. Ms. Leavitt began employment with Victorian Finance as a loan officer on

September 10, 2018. She worked from Victorian Finance's branch office located in Atlanta, Georgia.

15. Ms. Leavitt was diagnosed with bipolar disorder prior to her employment with Victorian Finance. Bipolar disorder substantially limits several of Ms. Leavitt's major life activities, including her ability to think, sleep, and speak, among numerous other mental and physical activities.

16. During her employment with Victorian Finance, Ms. Leavitt was sexually harassed by her manager, Sy Kingsada ("Kingsada"). Kingsada's harassment of Ms. Leavitt included making inappropriate sexual statements and comments.

17. Kingsada's harassment of Ms. Leavitt significantly exacerbated the symptoms and effects of her bipolar disorder.

18. In July 2019, Ms. Leavitt experienced two medical emergencies, including atypical pneumonia and transient cerebral ischemic attack, also known as a "mini stroke."

19. Because of these medical conditions, and because of the worsened symptoms of bipolar disorder caused by Kingsada's sexual harassment, Ms. Leavitt began medical leave on or about July 11, 2019.

20. While on medical leave, on August 25, 2019, Ms. Leavitt broke her right tibia

and severely sprained her left ankle. Ms. Leavitt was unable to walk due to these injuries.

21. Following her August 25th leg injury, Ms. Leavitt remained on medical leave due to her inability to walk and her ongoing symptoms related to bipolar disorder.

22. During her medical leave, on October 30, 2019, Ms. Leavitt sent a detailed letter to Victorian Finance's human resources department describing the sexual harassment she experienced from Kingsada.

23. On November 15, 2019, Ms. Leavitt provided Victorian Finance a letter from her physician stating that while Ms. Leavitt was currently unable to work, she had recently regained her ability to walk and was receiving physical therapy. The letter further stated that Ms. Leavitt's next medical appointment was scheduled for January 23, 2020, and that her return-to-work status would be updated at that time.

24. Victorian Finance terminated Ms. Leavitt on January 16, 2020, just six days before her January 23rd appointment.

**Factual Allegations Regarding Plaintiff's FLSA Claim**

25. Victorian Finance employed Ms. Leavitt within the meaning of the FLSA.

26. Victorian Finance hired Ms. Leavitt.

27. Victorian Finance maintained Ms. Leavitt's employment records.

28. Victorian Finance set Ms. Leavitt's schedule.

29. Victorian Finance paid Ms. Leavitt's wages.

30. As a loan officer with Victorian Finance, Ms. Leavitt was paid either $11.00 per hour, or if she successfully closed a loan, she received 1% of the value of the loan in lieu of her hourly pay.

31. During her employment with Victorian Finance, Ms. Leavitt regularly worked more than 40 hours per week. Ms. Leavitt also regularly performed work for Victorian Finance while she was not "clocked in." For example, Ms. Leavitt regularly performed the duties and responsibilities of her loan officer position before and after normal working hours.

32. Because much of Ms. Leavitt's work was performed off-the-clock, she received no compensation, including minimum wage and overtime, for these working hours.

33. As a result of Ms. Leavitt working off-the-clock, Victorian Finance failed to pay Ms. Leavitt 1.5 times her regular hourly rate for her working hours over 40 per week.

**Factual Allegations Regarding Plaintiff's Breach of Contract Claim**

34. Victorian Finance employed Ms. Leavitt to perform work as a loan officer.

35. Victorian Finance had a contract with Ms. Leavitt to pay her at an agreed-upon rate for all hours worked on behalf of Victorian Finance.

36. Ms. Leavitt did in fact perform work on behalf of Victorian Finance.

37. As described above, Ms. Leavitt performed work for Victorian Finance while off-the-clock. Therefore, despite Victorian Finance's contractual obligations, it failed to pay Ms. Leavitt the agreed-upon hourly rate for all hours she performed work on behalf of Victorian Finance.

**COUNT ONE**

**Disability Discrimination in Violation of Title I of the ADA**

38. Ms. Leavitt incorporates the above paragraphs as if fully set forth herein.

39. Title I of the ADA prohibits employers from terminating an employee due to the employee's disability or perceived disability. Title I of the ADA also requires that employers reasonably accommodate an employee's disability.

40. Ms. Leavitt was a qualified individual with a disability under the ADA, as she was able to perform the essential functions of her position with or without accommodation.

41. Defendant violated the ADA by failing to engage in the interactive process to determine whether accommodations were available that would allow Ms. Leavitt to perform the essential functions of the loan officer position.

Defendant terminated Ms. Leavitt's employment instead of engaging in the interactive process required under the ADA.

42. Defendant also violated the ADA by failing to reasonably accommodate Ms. Leavitt's disability by permitting additional medical leave as a reasonable accommodation, or by offering other accommodations that would have allowed Ms. Leavitt to return to her position. Instead of accommodating Ms. Leavitt's disability, Defendant terminated her employment.

43. Finally, Defendant violated the ADA by terminating Ms. Leavitt's employment because of her disability. Specifically, Defendant terminated Ms. Leavitt allegedly because she could not perform the essential functions of the loan officer position, when Ms. Leavitt was unable to do so because of her disability and Defendant's failure to reasonably accommodate her disability.

44. Ms. Leavitt is entitled to recover all damages caused by Defendant's above-described ADA violations, including lost wages, compensatory damages, attorneys' fees, and litigation costs.

**COUNT TWO**

**Retaliation in Violation of the ADA and Title VII**

45. Ms. Leavitt incorporates the above paragraphs as if fully set forth herein.

46. The ADA and Title VII prohibit covered employers from retaliating against

employees who engage in conduct protected by these statutes. For example, under the ADA, an employer is prohibited from retaliating against an employee who requests or receives a reasonable accommodation under the ADA. Similarly, Title VII prohibits employers from retaliating against an employee who complains of sexual harassment in the workplace.

47. Defendant violated the ADA by terminating Ms. Leavitt in retaliation for her need for and use of medical leave as a reasonable accommodation under the ADA.

48. Further, Defendant violated Title VII by terminating Ms. Leavitt in retaliation for her complaints of sexual harassment by Kingsada.

49. Ms. Leavitt is entitled to recover all damages caused by Defendant's above-described ADA and Title VII violations, including lost wages, compensatory damages, attorneys' fees, and litigation costs.

**COUNT THREE**

**Failure to Pay Minimum Wage and Overtime in Violation of the FLSA**

50. Ms. Leavitt incorporates the above paragraphs as if fully set forth herein.

51. The FLSA requires covered employers, such as Defendant, to pay employees at least minimum wage for all working hours.

52. The FLSA requires covered employers, such as Defendant, to pay all non-

exempt employees 1.5 times their regular hourly rate for all working hours over 40 per week.

53. Ms. Leavitt was not subject to any exemption from overtime pay under the FLSA and applicable regulations.

54. As set forth above, because Ms. Leavitt regularly performed off-the-clock work for Defendant, and because she regularly worked more than 40 hours per week, Defendant failed to pay Ms. Leavitt minimum wage as required by the FLSA. Defendant also failed to pay Ms. Leavitt 1.5 times her regular hourly rate for all working hours over 40 per week as required by the FLSA.

55. Defendant knew or should have known that Ms. Leavitt regularly worked off-the-clock and more than 40 hours per week. Therefore, Defendant willfully violated the FLSA in failing to pay Ms. Leavitt proper minimum wage and overtime.

56. Ms. Leavitt is entitled to recover all damages under the FLSA, including unpaid wages and overtime, liquidated damages, and attorneys' fees and costs.

**COUNT FOUR**

**Breach of Contract Under Georgia Law**

57. Ms. Leavitt incorporates the above paragraphs as if fully set forth herein.

58. Defendant had a contractual obligation to pay Ms. Leavitt at a specified rate

for all hours worked.

59. Defendant failed to pay Ms. Leavitt the agreed-upon wage for all hours worked.

60. Each time Defendant failed to pay Ms. Leavitt the agreed-upon wage for hours worked, Defendant breached its contractual agreement with Ms. Leavitt.

61. As a result of Defendant's breach of contract, Defendant is liable to Ms. Leavitt for the amount of unpaid straight-time wages she earned that remain unpaid at the contractually-specified rate.

Based on the above, Ms. Leavitt demands a jury trial on all triable issues and asks the Court for the following relief:

(1) Issue a declaratory judgment that Defendant's acts, policies, practices, and procedures complained of herein violated Ms. Leavitt's rights under the ADA, Title VII, the FLSA, and Georgia law;

(2) Grant Ms. Leavitt a permanent injunction enjoining Defendant and its officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment practice or policy that discriminates against Ms. Leavitt and others similarly-situated;

(3) Grant to Ms. Leavitt judgment in her favor and against Defendant under all counts of this Complaint;

(4) Order Defendant to make Ms. Leavitt whole by providing for her out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits, or other compensation denied or lost because of Defendant's unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

(5) Order Defendant to compensate Ms. Leavitt for mental and emotional damages suffered because of Defendant's unlawful and discriminatory acts;

(6) Order Defendant to make Ms. Leavitt whole by paying her all damages due under the FLSA and Georgia law, including all unpaid wages, overtime, and liquidated damages under the FLSA;

(7) Order that Ms. Leavitt be reinstated or, in the alternative, be awarded front pay;

(8) Grant to Ms. Leavitt her reasonable attorneys' fee and any and all other costs associated with this action; and

(9) Grant such additional monetary and equitable relief as the Court deems appropriate.

Respectfully submitted on January 25, 2021.

**Regan Keebaugh**
Georgia Bar No. 535500
Radford & Keebaugh, LLC
315 W. Ponce de Leon Ave., Suite 1080
Decatur, Georgia 30030
T: (678) 271-0300
F: (678) 271-0311
regan@decaturlegal.com